## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRADLEY HALLER,** | Civ. No. 22-00773 (KM) (MAH) |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **SULMAN USMAN, JAMISON HINDER, and ADAPTIVE GREEN, INC.,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on a motion to dismiss the complaint by defendants Sulman Usman, Jamison Hinder, and Adaptive Green, Inc. ("Adaptive"). (DE 9.)[1]  The plaintiff, Bradley Haller, is a former employee of Adaptive; Usman and Hinder are, respectively, Adaptive's president and vice president, as well as the company's sole shareholders.

After Haller was terminated from his employment at Adaptive, he commenced this action, alleging that he was promised in his employment contract, but never received, a ten percent ownership interest in the company. The defendants now move to dismiss on two grounds: lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. 8.)

---

[1]      Certain key items from the record will be abbreviated as follows:

DE = Docket entry number in this case

Compl. = Complaint (DE 1, Ex. A)

Mot. = Defendants' brief in support of their motion to dismiss (DE 9-1)

Opp. = Haller's brief in opposition to defendants' motion to dismiss (DE 13)

Resp. = Defendants' brief in response to Haller's opposition brief (DE 14)

For the reasons set forth below, the motion to dismiss is **DENIED** without prejudice, and jurisdictional discovery will be ordered.

## I.      Background

The allegations of the complaint are as follows. On February 1, 2017, Haller entered into a written employment agreement with Adaptive. (Compl. ¶6.) The agreement provided that Haller would receive a salary in addition to a "onetime stock award equivalent to 10% of [Adaptive] as of February 1, 2017." (*Id.* ¶7.) The agreement also provided that Haller would not "engage directly or indirectly in any business that competes with [Adaptive] . . . while [Haller] remains a shareholder of Adaptive Green, Inc." (*Id.* ¶8.)

Over the course of Haller's employment with Adaptive, the defendants "made numerous and extensive representations to [Haller] reiterating and confirming" his ten percent ownership stake in the company. (*Id.* ¶9.) For instance, in July 2019, Haller emailed Usman to request information regarding tax returns and disbursement payments for the company's shareholders. Usman responded by referencing the February 2017 employment contract when discussing Haller's "ownership stake." (*Id.* ¶¶10-11.)

Nonetheless, the defendants continually "made excuses to avoid formalizing [Haller's] ownership stake" in the company. (*Id.* ¶12.) They presented Haller with two offers in April and July 2021, but neither of the offers guaranteed Haller a ten percent ownership stake. The April 2021 offer provided that Haller would receive salary plus "Cash Bonus Compensation equal to 10% of the 'Cash Available' for each year that [he is] employed by [Adaptive.]." *(Id.* ¶13.) The July 2021 offer would have entitled Haller to receive ten percent of defendant Hinder's equity in Adaptive as of April 26, 2023. (*Id.* ¶15.) It is not clear from the complaint whether Haller accepted either of these offers.

In December 2021, the defendants terminated Haller's employment with Adaptive. (*Id.* ¶17.) Haller, who is a New Jersey resident, filed this lawsuit in New Jersey Superior Court in January 2022, asserting a number of claims

2

including breach of contract, unjust enrichment, and fraud. (*Id.*) After removing the case to federal court on the basis of diversity jurisdiction, the defendants filed this motion to dismiss. (DE 1 ¶¶9-14, DE 9.) They argue that the complaint should be dismissed in its entirety both because this court lacks personal jurisdiction over each defendant and because Haller has failed to state a claim on each of the seven asserted counts. (Mot.)

## II.   Discussion

The threshold issue is whether this Court possesses the power to exercise personal jurisdiction over the defendants. If not, then it cannot act.

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 258–59 (3d Cir. 1998). First, the court must apply the long-arm statute of the state in which it sits to determine whether exercising personal jurisdiction over the defendant is permitted. *Id.* Second, the court must evaluate whether exercising personal jurisdiction under the given circumstances would be consistent with the requirements of the Due Process Clause of the United States Constitution. *Id.* For a federal court sitting in New Jersey, "this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.*

"Due process requires an individual [or entity] to establish meaningful contacts with the forum state before the individual [or entity] may be subjected to binding judgments in that state." *Schneider & Marquard, Inc. v. Facil, LLC,* 2007 WL 2814600, No. 07-CV-182 (JLL), at *3 (D.N.J. Sept. 25, 2007) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-472 (1985)). Depending on the nature and extent of these contacts, a court may exercise either general jurisdiction or specific jurisdiction over the defendant. Specific jurisdiction requires a connection between the defendant's contacts with the forum and the plaintiff's cause of action, whereas a defendant subject to general jurisdiction in a forum may be sued there regardless of whether the suit is related to the

3

defendant's contacts. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) A defendant must therefore have much more extensive contacts with a forum in order for general jurisdiction to apply.

For a court to exercise either general or specific jurisdiction, the defendant must have "purposefully directed its activities" toward the forum state. *Burger King,* 471 U.S. at 471 (quotations omitted). A defendant cannot be haled into a foreign forum for "fortuitous" or "attenuated" contacts, or for contacts that are the result of the "unilateral activity of another party or a third person." *Id.*

Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of demonstrating that it exists. *Metcalfe*, 566 F.3d at 330. "If the district court does not hold an evidentiary hearing, 'the plaintiff[] need only establish a prima facie case of personal jurisdiction.'" *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007)). The plaintiff does so by submitting affidavits or other competent evidence that demonstrates "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quotation omitted).

In deciding a motion to dismiss for lack of personal jurisdiction, "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). "Because general and specific jurisdiction are 'analytically distinct categories,' [a court] considers the facts relevant to each category separately." *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d at 321).

### A. General jurisdiction

The exercise of general jurisdiction is proper where the defendant's "affiliations with the state are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

4

564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler, supra* at 137 (quoting *Goodyear, supra* at 924). With respect to a corporation, the paradigm forums are the place of incorporation and the principal place of business. *Daimler, supra.*

As the Supreme Court has explained, general jurisdiction may be exercised over a corporate defendant in a forum other than its place of incorporation or principal place of business only in the "exceptional case." *Id.* at 140, n.19. In such an "exceptional case," the corporation's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* "An evaluation of the substantiality of a foreign corporation's operations under such circumstances, however, 'calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide,' because a corporation simply operating in multiple forums could 'scarcely be deemed at home in all of them.'" *Otsuka Pharm. Co. v. Mylan, Inc.,* 106 F.Supp.3d 456, 465 (D.N.J. 2015) (quoting *Daimler*, 571 U.S. at 139, n.20). Such a finding is rarely made. Put another way, simply doing business in a state is far from sufficient to render a corporation subject to general jurisdiction there.

I begin with the individual defendants. Usman is a resident of California and Hinder is a resident of Florida. (Compl. ¶¶2-3.) Thus, this Court does not have general jurisdiction over these defendants based on their domiciles. With respect to "continuous and systematic contacts," the Supreme Court has not explicitly authorized the exercise of general jurisdiction over an individual defendant based on such contacts. *Koch v. Pechota*, No. 3:16-CV-3637-BRM-LHG, 2017 WL 3234381, at *3 (D.N.J. July 31, 2017), *aff'd*, 744 F. App'x 105 (3d Cir. 2018). Rather, the Supreme Court has commented that "[i]t may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *See Burnham v. Superior Ct.*

*of California, Cnty. of Marin,* 495 U.S. 604, 610, n.1 (1990). In light of this comment and the lack of cited authority to the contrary, I decline to consider whether Hinder and Usman have corporate-style continuous and systematic contacts with New Jersey. I conclude instead that the Court lacks general jurisdiction over these defendants.

The jurisdictional analysis is different, however, when it comes to defendant Adaptive, a corporation. Adaptive is a New York corporation with its principal place of business in New York. (Compl. ¶4) Haller relies instead on allegedly continuous and systematic contacts with New Jersey. He has submitted a sworn declaration in which he attests to a number of contacts between Adaptive and the state of New Jersey: Adaptive completed numerous projects in New Jersey during Haller's nearly five years of employment there, providing additional maintenance at each location for at least one year post-completion; Usman and Hinder, on behalf of Adaptive, traveled to New Jersey for site visits on these projects; Haller's residence in New Jersey "was used as storage" for Adaptive's materials and equipment (Haller believes that the defendants claimed this storage space as a 'write-off' on their tax returns); Haller accepted deliveries on behalf of Adaptive at his residence in New Jersey; Haller worked for Adaptive exclusively from his home office in New Jersey between February 2020 and December 2021; and Haller conducted work on behalf of Adaptive in New Jersey and was instructed by Usman and Hinder to solicit business for Adaptive in New Jersey. (DE 13-1 ¶¶11-18.)

These facts are extrinsic to the complaint, but assuming for the moment that they are true, it is clear that Adaptive has "purposefully directed" at least some business activities toward the State of New Jersey. *Burger King,* 471 U.S. at 471. At a minimum, completing projects and providing ongoing maintenance to clients in New Jersey, conducting site visits here, and using Haller's New Jersey home for storage and deliveries cannot be considered "fortuitous" or "attenuated" contacts, or the result of mere "unilateral activity of another party or a third person." *Id.* To the contrary, Haller has shown that Adaptive intentionally reached out beyond the borders of New York to carry on some

business activities in New Jersey.

Such a showing, however, does not go much beyond a demonstration that a claim of general jurisdiction may not be frivolous and could conceivably be fleshed out by discovery. The actual standard for exercising general jurisdiction is a daunting one, and I cannot find that Haller has demonstrated that Adaptive's contacts with New Jersey are so "continuous and systematic" as to render Adaptive essentially at home here. *See Daimler*, 571 U.S. at 127. To do so, Haller would need to provide far more information about the company, perhaps including information about its activities nationwide and worldwide. *See id.* at 139 n.20.

We are only at the pleading stage, however, and it is possible that limited discovery may allow Haller to uncover additional facts that would render the exercise of general jurisdiction proper. In this Circuit, jurisdictional discovery is generally permitted unless the plaintiff's jurisdictional claims appear "clearly frivolous." *Marchionda v. Embassy Suites, Inc.*, 122 F.Supp.3d 208, 211 (D.N.J. 2015) (citing *Toys 'R' Us*, 318 F.3d at 456). Given that Haller's claims do not appear clearly frivolous, I will grant leave to obtain targeted jurisdictional discovery under the supervision of the assigned Magistrate Judge.

### B. Specific jurisdiction

To establish specific jurisdiction, a plaintiff must show that (1) the defendant "purposefully directed its activities" at the forum, (2) the litigation "arises out of or relates to" at least one of those activities, and (3) the exercise of jurisdiction otherwise "comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citations omitted). Haller argues that specific jurisdiction exists in this case because all of his claims arise out of his employment agreement with Adaptive, and that, pursuant to that agreement, he worked from his home office in New Jersey and conducted and solicited business on behalf of Adaptive in New Jersey. (Opp. 14.)

The defendants agree that all of Haller's claims arise out of the employment agreement but insist that (1) neither Usman nor Hinder signed

7

that agreement in their individual capacities (only Usman signed it, and only in his official capacity as Adaptive president), and (2) the agreement did not direct Haller to work from New Jersey, nor did it require him to solicit or conduct business in New Jersey. (Resp. 10-11.) The defendants further maintain that Haller began working from home in New Jersey only once Adaptive's New York office shut down at the onset of the COVID-19 pandemic in early 2020, and that the office reopened in June 2020, after which the company did not authorize Haller to work from home.

The defendants attached the employment agreement to their brief in support of their motion to dismiss, and Haller attached the same to his opposition brief. The defendants are correct that the agreement does not mention the State of New Jersey at all. As for Haller working from home in New Jersey after Adaptive's New York office reopened, he does not state in his sworn declaration that this was anything other than a personal choice on his part. *See Croat v. Mission Fine Wines, Inc.*, No. CV 19-17786 (FLW), 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (specific jurisdiction could not be exercised over employer based on employee's personal choice to occasionally work from home in New Jersey). And surely his working from home during the COVID-19 shutdown cannot be considered a purposeful activity directed at the State of New Jersey by Adaptive.

Thus, putting aside the fact that neither Hinder nor Usman signed the employment agreement in their personal capacities, Haller has not shown that his cause of action arises out of an act that was purposefully directed at the state of New Jersey. Although he states in his declaration that he was instructed to solicit and conduct business in New Jersey on behalf of Adaptive, he has not come forward with any evidence demonstrating that he was hired to carry out such activities, which would establish a connection between the employment agreement and the New Jersey. Perhaps with limited discovery, however, he may be able to do so. I will therefore defer ruling on the personal jurisdiction issue for now, and authorize targeted jurisdictional discovery under the direction of the assigned Magistrate Judge.

### III.    Conclusion

The motion to dismiss (DE 9) is **DENIED WITHOUT PREJUDICE TO RENEWAL AFTER JURISDICTIONAL DISCOVERY.** The plaintiff is granted leave to obtain targeted jurisdictional discovery under the supervision of the assigned Magistrate Judge. Counsel are directed to confer and contact the Magistrate Judge within ten days to set up a schedule for such discovery, if desired. The parties are encouraged to consider alternatives, such as consent to jurisdiction or change of venue to a nearby forum possessing jurisdiction, when they meet and confer.

Given the uncertainty surrounding jurisdiction, I do not reach the defendants' substantive arguments pursuant to Fed. R. Civ. P. 12(b)(6).

An appropriate order will issue.

Dated: Nov. 18, 2022

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**