UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRADLEY HALLER,** | Civil Action No. 22-773 (SDW) (MAH) |
| Plaintiff, | |
| v. | |
| **SULMAN USMAN, et al.,** | OPINION |
| Defendants. | |

### I. INTRODUCTION

This matter comes before the Court on Defendants' Sulman Usman, Jamison Hinder, and Adaptive Green, Inc's (at times, collectively "Defendants") renewed motion to dismiss Plaintiff's Bradley Haller ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. *See generally* Renewed Mot. to Dismiss, D.E. 33. Plaintiff opposed the motion on June 28, 2023, and Defendants replied on July 19, 2023. Opp'n, D.E. 34; Reply, D.E. 37. Pursuant to Local Civil Rule 73.1, the parties have consented to the Undersigned's jurisdiction for the disposition of this motion. *See* Consent to Magistrate Jurisdiction, Oct. 10, 2023, D.E. 40. The Undersigned has considered the briefs submitted in support of, and in opposition to, the motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons set forth below, Defendants' motion to dismiss is **granted.**

### II. BACKGROUND

Plaintiff's claims arise from Defendant Adaptive Green's alleged failure to fulfill contractual obligations under his employment agreement ("the Employment Agreement").

Compl., D.E. 1-1, ¶¶ 5-8.  On February 1, 2017, Plaintiff entered into the Employment Agreement with Defendant Adaptive Green.  *Id.* at ¶ 6; *see also* Employment Agreement, D.E. 33-3, at 10-11.[1]  The Employment Agreement provided that in addition to Haller's salary, he would receive a "onetime stock award equivalent to [ten percent]" of the company.  *Id.* at ¶ 7.  According to the Complaint, Defendants Usman and Hinder, Adaptive Green's sole-stock owners, often made representations to Plaintiff confirming his ten percent ownership interest in Adaptive.  *Id.* at ¶ 12.  For example, in an email exchange between Plaintiff and Defendant Usman in July 2019, Usman referenced the Employment Agreement including Plaintiff's "ownership stake."  *Id.* at ¶¶ 10-11.

Plaintiff alleges despite the express language of the Employment Agreement and the aforementioned representations, Defendants continuously attempted to subvert his ownership interest in the company.  *Id.* at ¶ 12.  For example, Defendants presented Plaintiff with two offers in 2021.  Plaintiff alleges that neither offer fulfilled the contractual obligations of his Employment Agreement.  *Id.* at ¶¶ 13-17.  One offer, in April 2021, was a "Profit Participation Agreement." *Id.* at ¶¶13-14; *see also* Profit Participation Agreement, D.E. 33-3, at 13-16.  This document entitled Plaintiff to a "Cash Bonus Compensation equal to [ten percent] of the 'Cash Available' for each year that [Plaintiff] [is] employed by the Company."  Compl., D.E. 1-1, at ¶ 13.  The other offer, presented in July 2021, afforded Plaintiff "[ten percent] of Defendant Hinder's equity in Adaptive" effective April 26, 2023.  *Id.* ¶ 15; *see also* Sub Agreement, D.E. 33-3, at 12.[2]  Although it is unclear from the Complaint if Plaintiff agreed to these offers, Plaintiff alleges the 2021 offers

---

[1]  The page numbers of docketed submissions refer to the automatic page numbers assigned by ECF.

[2]  Although it is unclear from Plaintiff's Complaint if he accepted these documents, Defendants have attached them in their submissions for the instant motion.  *See generally* Sub Agreement, D.E. 33-3, at 12; Profit Participation Agreement, D.E. 33-3, at 16.  In those attachments, Plaintiff has signed both agreements.

2

were "bad faith attempts" to deny Plaintiff's contractual right to his ownership in the company. Compl., D.E. 1-1, at ¶¶ 14,16-17. Ultimately, Plaintiff was terminated in December 2021. *Id.* at ¶ 17.

Plaintiff is a resident of New Jersey. *Id.* at ¶ 1. However, neither of the agreements, nor the Employment Agreement, references the State of New Jersey. None of Defendants is a resident of New Jersey. *Id.* at ¶¶ 2-4. Adaptive Green is incorporated in New York, and its principal place of business is in New York, New York. *Id.* Defendant Hinder is a resident of California, and Defendant Usman is a resident of Florida. *Id.* at ¶¶ 2-4.

On January 25, 2022, Plaintiff filed his Complaint in the Superior Court of New Jersey, Morris County, Chancery Division. Notice of Removal, D.E. 1, at ¶ 2. The Complaint alleges breach of contract; unjust enrichment and quantum meruit; fraud and equitable fraud. Compl., D.E. 1-1, at ¶¶ 22, 27, 31, 38. Plaintiff seeks relief in the form of a declaratory judgment, a constructive trust, and an accounting. *Id.* at ¶¶ 18, 50. On February 11, 2022, Defendants removed the action to the District Court on the basis of diversity jurisdiction. *See generally* Notice of Removal, D.E. 1.

Defendants first moved to dismiss this action on March 23, 2022, for lack of personal jurisdiction and failure to state a claim. *See generally* First Mot. to Dismiss, D.E. 9. On November 18, 2022, the Court denied Defendants' motion, without prejudice. Op., D.E. 19, at 1-2. The Court determined that the current record could not establish personal jurisdiction over Defendants, either general or specific. *Id.* at 6-8. However, the Court also concluded that Plaintiff's claims were not clearly frivolous, and therefore it permitted targeted jurisdictional discovery. *Id.* The Court declined to address Defendants' arguments under 12(b)(6), "given the uncertainty surrounding jurisdiction." *Id.* at 9.

Accordingly, the Court and parties held several conferences and set a schedule to complete targeted jurisdictional discovery. *See generally* Targeted Discovery Scheduling Order, Dec. 16, 2022, D.E. 24; *see also* Am. Targeted Discovery Scheduling Order, April 3, 2023, D.E. 32. This limited discovery included responses to written interrogatories and the depositions of Plaintiff, Defendant Hinder, and Alexander Roth.[3] *See generally* Excerpts of Plaintiff's Dep., D.E. 33-2, D.E. 37-2, Plaintiff's Responses to Interrogatories, D.E. 33-2, at 2-9; D.E. 33-4, at Employment Agreement, D.E. 33-3, at 10-12; Profit Participation Agreement, D.E. 33-3, at 13-16; Sub Agreement, D.E. 33-3, at 12; Packing Slips, D.E. 33-3, at 17-21; Defendants' Response to Interrogatories, D.E. 33-5; Roth Dep., D.E. 34-2; High Tech High School Agreement, D.E. 37-3.

Following the close of targeted discovery, on May 31, 2023, Defendants renewed the instant motion to dismiss, again citing lack of personal jurisdiction and failure to state a claim. *See generally* Renewed Mot. to Dismiss, D.E. 33. Defendants argue that even after jurisdictional discovery, Plaintiff's allegations are insufficient to establish personal jurisdiction over Defendants. Mem. in Supp. of Renewed Mot. to Dismiss, D.E. 33-6, at 10-12. Defendants contend that there is no evidence that they purposefully directed their activities toward the State, or that Plaintiff was hired to solicit or conduct business in New Jersey. *Id.* at 13-17; Reply, D.E. 37, at 13-15.

On June 18, 2023, Plaintiff filed his opposition. *See generally* Opp'n, D.E. 34. Although Plaintiff acknowledges that Defendants are not New Jersey residents, nor is Adaptive Green incorporated in the State, he asserts this Court possesses general jurisdiction due to Defendants'

---

[3] Alexander Roth's relation to Defendants or Plaintiff is unclear. Plaintiff's interrogatory responses identify Roth as an individual with "knowledge of Defendants' business development in New Jersey as well as of storage of various materials and equipment by Defendants in New Jersey at [Plaintiff's] residence." *See* Plaintiff's Responses to Interrogatories, D.E. 33-4, at 3. However, neither party specifically details in their papers, Roth's title or his role at Adaptive Green.

4

significant contacts with the State since 2016. *Id.* at 8-12. Plaintiff also argues specific jurisdiction over Defendants is appropriate based on their contacts in New Jersey, and Plaintiff's remote work schedule in the State. *Id.* at 13-17.

### III. ANALYSIS

#### A. Personal Jurisdiction

Where a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Procedure 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over the moving party. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). Where a court does not hold an evidentiary hearing on the motion to dismiss, as is the case here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). When contesting personal jurisdiction, a plaintiff must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state." *See Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)). A plaintiff may demonstrate these jurisdictional facts through sworn affidavits or other competent evidence. *See, e.g.*, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984); *see also Basse v. Bank of Am., N.A.*, No. 22-03674, 2023 WL 2696627, at *2 (D.N.J. Mar. 29, 2023) ("Indeed, the plaintiff must respond to the defendant's motion with 'actual proofs'; 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9)).

5

### i. General Jurisdiction

#### a. Parties' Arguments

Plaintiff argues that Adaptive Green's contacts were so systematic and continuous that the Court possesses general jurisdiction over Defendants, even though no Defendant is domiciled in the State. Opp'n, D.E. 34, at 9. Specifically, Plaintiff contends Adaptive Green's certification to conduct business in New Jersey and appointment of a registered New Jersey agent amount to Defendants' consent to be brought to court in New Jersey. *Id.* at 9-10, 12. Plaintiff also claims that Defendants' use of his home for the storage of equipment and materials justifies the exercise of general jurisdiction. *Id.* at 12. Finally, Plaintiff argues that Adaptive Green's "high profile jobs and projects" within the State demonstrate general jurisdiction, as the projects required Plaintiff's "consistent and constant physical presence in New Jersey" and allegedly yielded millions of dollars. *Id.* at 11.

Defendants contend that Plaintiff's arguments regarding any alleged consent to general jurisdiction run counter to the Supreme Court's decision in *Daimler v. Bauman*, 571 U.S. 117 (2014), as well as decisions within this District. Reply, D.E. 37, at 8-9. Further, Defendants argue nothing revealed in jurisdictional discovery illustrates that Adaptive Green's actions in New Jersey were so significant as to render the company "essentially at home in the State." Mem. in Supp. of Renewed Mot. to Dismiss, D.E. 33-6, at 11-12. This Court agrees with Defendants and concludes that Plaintiff failed to establish general jurisdiction over any of the Defendants in the instant action.

#### b. Standard

General personal jurisdiction exists when the evidence shows that a defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). For general

personal jurisdiction, courts consider, among other factors, whether a defendant's personnel or facilities are located in the forum state and whether a defendant advertised or solicited business there. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000). Courts may exercise general jurisdiction over foreign corporations if that corporation's affiliations with the forum are so "continuous and systematic" so as to render them "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). An individual is subject to general jurisdiction in his or her home state. *McGillvary v. Grande*, No. 21-14015, 2022 WL 1442241, at *3 (D.N.J. May 6, 2022). This is because "the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *See Daimler*, 571 U.S. at 127. A corporation is considered "at home" where it is incorporated and where it maintains a principal place of business. *See Goodyear*, 564 U.S. at 924.

It is only "[i]n exceptional cases a corporation's operations in a different forum may be so substantial and of such a nature as to render the corporation at home in that State." *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 Fed. Appx. 119, 120 (3d Cir. 2017). As a result, it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *Malik v. Cabot Oil & Gas Corp.*, 710 Fed. App'x 561, 564 (3d Cir. 2017). A court's inquiry into the presence of general jurisdiction "does not focus solely on the magnitude of the defendant's in-state contacts[;] [g]eneral jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *See Daimler*, 571 U.S. at 139 n.20.

7

### c. Defendants Hinder & Usman

As a preliminary matter, it is undisputed that Defendants Hinder and Usman are domiciled in California and Florida, respectively. *See* Compl., D.E. 1-1, at ¶¶ 2-4. Further, neither Hinder nor Usman was served in New Jersey. As such, this Court does not have general jurisdiction over them. *See Smith v. Bishop*, No. 20-12526, 2021 WL 1820487, at *2 (D.N.J. May 6, 2021) ("General jurisdiction for individual defendants is based either on their domicile or presence within a jurisdiction when they are served."). With respect to Defendant Adaptive Green, this Court similarly concludes Plaintiff cannot establish general jurisdiction by either consent, or its contacts within the State.

### d. Consent to General Jurisdiction

As noted, Plaintiff claims that Adaptive Green consented to be sued in New Jersey because it possesses a certification to conduct business in the State, and also has a registered agent to accept service of process. *See* Opp'n, D.E. 34, at 9-10. Defendants counter that Plaintiff's arguments contravene *Daimler* and are supported by outdated precedent. Reply, D.E. 37, at 9. This Court agrees with Defendants.

In *Daimler*, 71 U.S. at 138, the Supreme Court rejected the argument that if a corporation conducts business in a state, it is subject to that state's general jurisdiction. The Court reasoned that to do so would be "unacceptably grasping." *Id.* Rather, the Court clarified that to establish general jurisdiction, the corporation's actions must be considered so "'continuous and systematic' as to render [it] essentially at home in the forum state." *Id.* at 139 (quoting *Goodyear*, 564 U.S. at 919). Here, Plaintiff principally relies on the Third Circuit decision, *Bane v. Netlink*, 925 F.2d 637, 640-41 (3d Cir. 1991), to support his argument that Adaptative Green consented to general jurisdiction through its business registration. However, Plaintiff's reliance is misplaced as *Bane*

8

predates *Daimler* and its underlying facts concerned Pennsylvania and not New Jersey. In *Bane*, the Third Circuit concluded that the defendant, a foreign corporation, was subject to personal jurisdiction in Pennsylvania because it was registered to do business there. *Id.* at 640-41. The court reached that conclusion because the relevant Pennsylvania statute explicitly stated that registration to conduct business in the state, "carrie[d] with it consent to be sued in Pennsylvania courts." *Id.* at 640.

New Jersey's analog registration and service statutes, N.J.S.A 14A:1-1 *et seq.*, do not contain such express language. *See Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 174 (D.N.J. 2016). However, as a result of *Bane*, differing interpretations of the statutes emerged in this District. One interpretation concluded defendant corporations that registered to do business in New Jersey consented to jurisdiction. *See Sadler v. Hallsmith SYSCO Food Servs.*, No. 8-4423, 2009 WL 1096309, at *2 (D.N.J. Apr. 21, 2009); *see also Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456 (D.N.J. 2015) (finding that the defendants consented to jurisdiction by registering to do business in New Jersey, appointing an agent for service of process, and conducting business in the State). Another interpretation acknowledged that N.J.S.A. 14A:1-1 *et seq.* did not possess the explicit language found in in *Bane*, but nonetheless, found consent could occur where a defendant corporation registered to do business here and was actually doing business in the State. *See Kubin v. Orange Lake Country Club, Inc.*, No. 10-1643, 2010 WL 3981908, at *3 (D.N.J. Oct. 8, 2010).

District Court Judge Arleo parted ways with other courts in this District in *Display Works, LLC v. Bartley*, 182 F. Supp. 3d at 174. There, Judge Arleo concluded that simply registering to do business in New Jersey, and even conducting some business in the state, could not establish general jurisdiction by consent. *Id.* at 179. First, Judge Arleo determined that registration in New

9

Jersey did not provide consent to personal jurisdiction because the relevant statutes "do not expressly discuss consent or general jurisdiction." *Id.* at 174. Further, she reasoned that to do so would contravene *Daimler*, and "would vastly expand the number of states where a foreign corporation can be subject to general jurisdiction, even though . . . corporations are not . . . 'essentially at home' in most, if not all, of them." *Id.* This Court agrees with the well-reasoned decision in *Display Works*.[4] Adaptive Green is incorporated in New York and its principal place of business is New York. Its registration, possession of an agent, and past business projects in the State are insufficient to establish consent to personal jurisdiction.

### e. Continuous and Systematic Contacts

Having concluded that Defendant Adaptive Green did not consent to personal jurisdiction, this Court now examines if the Defendant corporation's contacts render this an "exceptional case[]" to qualify New Jersey as its home state. *See Barth*, 697 Fed. App'x at 120. Plaintiff argues that Adaptive Green's projects in the State which required his "consistent and constant physical presence" and generated significant revenue establish general jurisdiction. Opp'n, D.E. 34, at 11. Defendants argue that the company's contacts with the State are insufficient to meet the standard articulated in *Daimler* because the projects in New Jersey generated only approximately three percent of the company's revenue. Mem. in Supp. of Renewed Mot. to Dismiss, D.E. 33-6, at 11.

---

[4] Several other courts within this District also have adopted Judge Arleo's analysis. *See Ferguson v. Aon Risk Servs. Companies, Inc.*, No. 19-930, 2020 WL 914702 (D.N.J. Feb. 26, 2020) ("[A]t least two courts in this District have concluded that the Supreme Court's decision [in *Daimler*] precludes the exercise of personal jurisdiction over a corporation simply because the corporation is registered to do business in New Jersey." (citing *Display Works*, 182 F. Supp. 3d at 174)); *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462 (D.N.J. 2021) (finding business registration could not amount to consent to jurisdiction and stating "I, too, agree with Judge Arleo"); *Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525 (D.N.J. Apr. 25, 2018) (finding no consent to personal jurisdiction based on two defendant corporations' registration and appointment of an agent in New Jersey stating "[t]he Court finds Judge Arleo's reasoning in Display Works persuasive").

This Court finds that the circumstances in the instant matter are insufficient to render Adaptive Green at home in New Jersey.

As the Court noted in *Daimler*, the inquiry into general jurisdiction is not solely based on the defendant's contact with the forum state, rather it requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *See Daimler*, 571 U.S. at 139 n.20. Indeed, when this Court examined Defendants' first motion to dismiss, it specifically explained that to overcome the "daunting" standard for exercising general jurisdiction, Plaintiff needed to supply "far more information about the company, perhaps including information about its activities nationwide and worldwide." Op., D.E. 19, at 7. An examination of both the evidence accompanying Plaintiff's submissions, and that gleaned from jurisdictional discovery and put before this Court, does not reach that standard. For example, Plaintiff's interrogatories assert information regarding several New Jersey projects. Plaintiff's Responses to Interrogatories, D.E. 33-4, at 3-5. However, Plaintiff fails to provide any evidence about the scale, number, or approximate revenue of projects outside of the State. Further, although Plaintiff asserts in his interrogatories the revenue of all of these projects, only one contract, for approximately $310,000 has been provided to the Court regarding Adaptive Green's projects. *See* High Tech High School Agreement, D.E. 37-3. Although Plaintiff appears to disagree with Defendants' three-percent revenue approximation, he fails to offer a counter percentage, or explain why that approximation is erroneous. Even assuming that the correct revenue amount is greater than $310,000, this Court does not conclude that amount demonstrates the continuous and systematic contacts needed to confer general jurisdiction. *See Daimler*, 571 U.S. at 123; *see also N. Am. Elite Ins. Co. v. Gen. Aviation Flying Serv., Inc.,* No. 18-14575, 2022 WL 2703011, at *3 (D.N.J. July 12, 2022) (finding no general jurisdiction based on revenue stating "[e]ven if [the defendant] derives more revenue

11

from New Jersey than Delaware or Florida, . . . it derived only around 10% of its overall revenue from operations in New Jersey during the relevant time period"). Moreover, there has been little evidence presented by either party regarding the revenue produced from other states where Adaptive Green conducts its business.

Further, Plaintiff's reliance on *Ruben v. U.S.*, 918 F. Supp. 2d 358 (E.D. Pa. 2013), is misplaced. Plaintiff points to *Ruben* for the proposition that Adaptive Green's contacts with New Jersey were sufficient to confer general jurisdiction. In that case, the plaintiff, was injured in New York while attending a museum constructed by one of the defendants, an architectural firm whose principal place of business was New York. *Id.* at 359. The firm, however, had several active projects within the forum state that had generated approximately $2,000,000 during the time at issue. *Id.* The court concluded general jurisdiction was appropriate, despite the firm's lack of property in the forum state. *Id.* at 360. The court explained that although the amount generated in Pennsylvania was relatively small in comparison to that earned in other states, it was "not de minimus." *Id.* However, the court further reasoned that the work performed by the firm in Pennsylvania was "central" to the defendant's core business, and also was well-known or high profile. *Id.* Therefore, it was fair for the firm to be hauled into court based on its contacts with the forum state. *Id.* The circumstances in the instant matter are distinct. First, $310,000 is objectively a smaller amount of money than $2,000,000. Further, Plaintiff has failed to offer evidence that the work Adaptive conducted within New Jersey was to Adaptive Green's core business as that of the *Ruben* defendant in Pennsylvania. Nor has Plaintiff offered information regarding the amount of work conducted by Adaptive Green nationwide. Without such information, this Court is without a basis to assess whether that amount is de minimus compared to business conducted in the State. Rather, Plaintiff has only demonstrated that Adaptive Green

has gone outside the borders of New York to conduct *some* business in New Jersey, a fact that was already known to this Court prior to jurisdictional discovery. Most importantly, *Ruben* predates *Daimler*.

It is true that jurisdictional discovery did provide some insight into Adaptive Green's activities nationwide and in the State. For example, Defendants' interrogatory responses illustrate that out of the 623 job requests from other states received by the corporation, Defendants responded to approximately 18 from New Jersey. Defendants' Response to Interrogatories, D.E. 33-5, at 5. Further, Defendants admit to possessing ten agreements for business within the State. *Id.* Plaintiff's own testimony also establishes that Defendant Adaptive Green sought work throughout the country by way of a "nationwide lead generator" described as "Dodge software," and that no job opportunities were limited to one area or location. *See* Excerpts of Plaintiff's Dep., D.E. 33-2, at 8:4-6, 18:10-16. Discovery revealed that Plaintiff accepted four deliveries at his home, at his explicit request for his own convenience. *Id.* at 7. However, this evidence hardly demonstrates that Adaptive Green's actions make Defendants at home here. At best, they show that Defendants carried out some business in New Jersey—but some contact with the forum state, regardless of its significance or proportion to the defendant's entire operation, is not the standard. Accepting Plaintiff's contention that general jurisdiction is appropriate, would flout *Daimler*, and allow for general jurisdiction in any state where a corporation does business, regardless of its relation to the underlying claim. At bottom, even with the benefit of jurisdictional discovery, Plaintiff has failed to demonstrate continuous and systematic contacts with New Jersey so as to render it at home in this State. Accordingly, this Court again finds that Plaintiff has not established general jurisdiction.

## ii. Specific Jurisdiction

### a. Parties' Arguments

Plaintiff argues that Defendants targeted the State, as evidenced through their use of Dodge software to generate requests for proposals in New Jersey, as well as the company's several jobs which occurred in the State. Opp'n, D.E. 34, at 14. He also contends that his role as a Project Director required a consistent on-site presence in New Jersey because Defendants failed to provide acceptable office accommodations following the COVID-19 pandemic. *Id.* at 15-16. Further, Plaintiff claims that because he was specifically terminated due to his remote work schedule in New Jersey, his claims arise from his Employment Agreement. *Id.* at 17.

Defendants counter that Plaintiff has not provided sufficient evidence that they directly targeted New Jersey, citing to Plaintiff's own deposition as support. *See* Reply, D.E. 37, at 8. Defendants similarly argue that Plaintiff has failed to provide a connection between his claims and New Jersey, specifically that "he was hired to solicit and conduct business in New Jersey on Adaptive Green's behalf." *Id.* at 9. This Court is not satisfied that it has specific jurisdiction over Defendants.

### b. Standard

Specific personal jurisdiction exists when the relationship among the forum, the defendant, and the cause of action are such that the defendant purposely availed itself of the forum's laws, the cause of action is related to or arises out of the defendant's contacts with the forum, and the defendant "should reasonably anticipate being haled into court there." *Mellon Bank*, 960 F.2d at 1221-22 (internal citations and quotations omitted). In the Third Circuit, courts conduct a three-part inquiry to determine whether specific personal jurisdiction exists: (i) whether the defendant "purposely directed" activities at the forum state; (ii) whether the plaintiff's core claim arises out

of or relates to "at least one of those specific activities;" and, if those two requirements are met, whether (iii) exercising jurisdiction over the non-resident defendant "comport[s] with fair play and substantial justice." *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations and quotations omitted). Although a specific personal jurisdiction analysis is usually claim specific, this is not required where the claims at issue factually overlap. *See Chen v. Wang*, No. 22-4708, 2023 WL 3182264, at *6 (D.N.J. Apr. 30, 2023).

First, the plaintiff must prove that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). While physical entrance is not necessary, a defendant's contacts must be such that they amount to a "deliberate targeting of the forum." *Id.* (quoting *O'Connor*, 496 F.3d at 317). Accordingly, "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson*, 357 U.S. at 253*); see also Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 353 (D.N.J. 1998) (stating that "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state").

The second prong of the three-part inquiry has been described as the relatedness prong. *Klick v. Asbestos Corp., Ltd.*, No. 20-16654, 2021 WL 2666709, at *2 (D.N.J. June 28, 2021) Under this prong, the court must determine if plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state. *See O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). For claims of a breach of contract, "the defendant's contacts with the forum [must have been] instrumental in either the formation of the contract or its breach." *Gen. Elec.*

15

*Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020) (quoting *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (alterations omitted)).

As to the third prong, the Court should examine several factors when considering fairness and justice including: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the procedural and substantive interests of other nations. *O'Connor*, 496 F.3d at 324.[5]

### c. Defendant Adaptive Green

This Court concludes specific jurisdiction over Adaptive Green is not appropriate as Plaintiff fails to establish a connection between the Employment Agreement and New Jersey. The fact that a defendant has purposefully directed its activities at the forum state alone is insufficient

---

[5] This Court finds that it does not possesses personal jurisdiction over Defendants Usman and Hinder under a theory of specific jurisdiction. Nothing submitted to this Court establishes that Usman and Hinder deliberately targeted New Jersey. First, Plaintiff's arguments regarding specific jurisdiction appear to relate solely to Adaptive Green's contacts as a corporation. *See Sovereign Consulting Inc. v. Cover Techs. Inc.*, No. 21-35, 2021 WL 2802219, at *3 n.2 (D.N.J. July 6, 2021) (analyzing the named defendant corporation and individual officer together because the plaintiff argues the same basis for personal jurisdiction for both). Further, although Usman and Hinder signed the contract as officers of the corporation, Plaintiff does not argue that Usman or Hinder consistently traveled to New Jersey themselves or that they negotiated Plaintiff's Employment Agreement here. *See Magill v. Elysian Glob. Corp.*, No. 12-6742, 2021 WL 1221064, at *6 (D.N.J. Apr. 1, 2021) ("In deciding whether to exercise personal jurisdiction in a breach of contract dispute, a district court must consider 'the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.'" (quoting *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001))). Accordingly, this Court finds that neither Hinder nor Usman directly targeted New Jersey, or that Plaintiff's claims arise from their individual actions in the forum. Therefore, this Court does not possess specific jurisdiction over these individual Defendants.

to confer specific jurisdiction. *See Vectra Visual, Inc. v. Hoving*, No. 4520339, 2012 WL 4520339, at *7 (D.N.J. Oct. 4, 2021) (finding no specific jurisdiction where the Court "assum[ed] without deciding" if the plaintiff met the first prong of the three-part inquiry).[6] Plaintiff's claims must also be related to Defendants' activities in the forum state. Accordingly, "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb v. Superior Court of Ca. San Francisco Cty.*, 585 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919). Here, Plaintiff's claims center around his Employment Agreement. He alleges the Employment Agreement provided him an ownership interest in Adaptive Green. However, even with the benefit of jurisdictional discovery, Plaintiff has not shown that Defendants' contacts with New Jersey were "instrumental in either the formation or the breach" of that Employment Agreement. *See O'Connor*, 496 F.3d at 320. First, the Employment Agreement does not mention New Jersey; there is no evidence that it was negotiated or signed in New Jersey. Nor has Plaintiff produced any evidence to establish what his declaration states—that he was "instructed to solicit and conduct business across the State of New Jersey." Plaintiff's Decl., D.E. 34-1, at ¶ 13. Certainly, the Employment Agreement provides no support for Plaintiff's assertion. Moreover, Plaintiff's testimony revealed that several leads or projects that took place in New Jersey were the result of already existing relationships. *See* Excerpts of Plaintiff's Dep., D.E. 33-2, at 10:15-23. Although Roth testified that Plaintiff's role at Adaptive Green required him to supervise individuals "on-site," the Court struggles to understand how that role would create a nexus to his

---

[6] This Court similarly assumes but does not decide Plaintiff has shown purposeful availment. On one hand, it is accurate that Adaptive Green completed several projects within New Jersey. However, it is equally true that Plaintiff's own testimony describes that the company would pursue any business opportunities it could obtain, and that the Dodge analytics was a nationwide generator. Excerpts of Plaintiff's Dep., D.E. 33-2, at 8, 18.

claims regarding his apparent denial of stock ownership in the company. Roth Dep., D.E. 34-2, at 13:9-11; *see Sun Chem. Corp. v. Am. Home Assurance Co.*, No. 20-6252, 2020 WL 5406171, at *8 (D.N.J. Sept. 9, 2020) (finding no specific jurisdiction where the plaintiff's cause of action did not arise out of contacts with New Jersey, but related to obligations the defendant allegedly owed under "four relevant insurance policies" which were the focus of the litigation). Further, the Court cannot find that Plaintiff's remote work in New Jersey related to his alleged ownership interest or his Employment Agreement. Although Plaintiff asserts that his termination was a result of his remote work schedule, nowhere in his Complaint does Plaintiff make this allegation. In fact, in the sworn declaration that Plaintiff attached to his opposition, he states the reason for his termination was in "direct retaliation" to his attempts to procure his ownership interest in the company and had no connection to the forum state. *See* Opp'n, Haller Decl., D.E. 34-1, at ¶ 14. *See Vectra Visual*, 2012 WL 4520339, at *7 (finding no specific jurisdiction where the plaintiff failed to connect the forum state to the defendant's alleged wrongdoing).

In any event, this Court can conclude only that Plaintiff's decision to work remotely was a personal choice and does not connect his Employment Agreement to New Jersey. Plaintiff has not offered sufficient evidence that Adaptive Green's office setup was the reason for his remote work. For example, Plaintiff did not offer testimony or any communications that he consulted Defendants about his concerns of the workspace as related to the pandemic. Nor does he offer any evidence that the Defendants instructed him to work remotely in order to conduct business in New Jersey. *See Croat v. Mission Fine Wines, Inc.*, No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (finding specific jurisdiction could not be exercised over employer based on employee's personal choice to occasionally work from home in New Jersey absent "deliberate direction or requirement by [the] [d]efendant"). At bottom, Plaintiff has not established a connection between

his claims concerning his Employment Agreement and the State of New Jersey. *See 13375 Ontario, Inc. v. Kookaburra Air, LLC*, No. 03-3774, 2005 WL 8175915 (D.N.J. Mar. 28, 2005) (denying specific jurisdiction where the plaintiff failed to offer new evidence gained during jurisdictional discovery). Therefore, this Court concludes that it does not possess specific jurisdiction over Defendants.[7] As this Court concludes a lack of both specific and general jurisdiction, it need not reach Defendants' arguments under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[8] *See Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020) ("If . . . personal jurisdiction is absent, the court is powerless to address the merits of the Rule 12(b)(6) motion.").

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, D.E. 34, is **granted** for lack of personal jurisdiction. An appropriate Order accompanies this Opinion.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: January 10, 2024

---

[7] Because the Court concludes that Plaintiff has not satisfied prong two, it need not to engage in a fairness analysis under prong three. *See O'Connor*, 496 F.3d at 317.

[8] Even if this Court decided to address Defendants' arguments, it would be unable to do so, as Defendants did not properly brief their arguments in their submissions to the Court. *See* Mem. in Supp. of Renewed Mot. to Dismiss, D.E. 33, at 16 (stating that Defendant "refer the Court to" the brief filed in their previous motion to dismiss for its arguments under 12(b)(6)).